Good morning, may it please the court. Chris Vance here on behalf of appellants Connor Dubrow and his parents Christy and Robert Dubrow. The appellants appreciate the opportunity to present to the court today the two discreet issues that face the court, which number one is whether the appellants exhausted their IDEA administrative remedies and the second issue before the court is whether the ALJ and the district court erred in ruling that Connor was not eligible under the IDEA, did not need evaluation and received a free appropriate public education. Often referred to by this court and other courts as FAPE. The standard for review, as the court knows, is a mixed question of fact, and law is de novo. Briefly, some of the facts that I think are most relevant, and we won't go into all of them because there are extensive documents. This was a nine day due process hearing, the largest I've ever been in, and it's shocking. I think the findings of fact and conclusions of law were well over 100 pages each, so I think the record is very replete with the evidence that was presented, but Connor is a very gifted child, cognitively speaking. His IQ, his verbal IQ is in the 99.7th percentile and his perceptual reasoning in the 96th. However, he is significantly disabled as well, which negatively impedes his functioning in all settings, but particularly in the educational setting. The reason for that is because Connor has ADHD, and with ADHD, he has executive function skill disorder, which is a symptom of ADHD. What that means is that Connor can't initiate tasks consistently timely, can't complete them consistently timely, can't follow through, can't find his items. He's sort of like, I think we've heard the saying and we've seen it, the absent-minded professor, brilliant, but he doesn't know where to be, when to be, and how to get there. And that has been the story of Connor's life. It started in kindergarten. It started when he was in elementary school. That's in the record. I won't go into all that. It went on in middle school. There is an overwhelming amount of objective evidence during the time that this was happening that not only did Cobb County School District know that Connor, he wasn't just suspected of having a disability. Cobb County School District knew he had a disability, knew it was severe, stated it in writing, and stated that it had negatively impacted his education for years. This court held in Filene in 2015, cited in the brief, that what triggers an evaluation under the IDA is that what you have to do is you have to undertake, you have to suspect a disability, and that it may have negatively impacted your education. Well, the evidence in the record, and I want to read this one section because I think it's important. This is a written admission by Cobb County in Connor's ninth grade year, his second semester, prepared by his school counselor on his 504 referral that states, Connor has struggled with symptoms of ADHD for many years. They knew. He has difficulty staying focused in the classroom, is easily distracted by sights and sounds. Time management is a huge issue for him. Organizing and completing tasks is extremely difficult. He has trouble completing the classwork, homework, and projects in a timely manner. Although he takes medication for ADHD, he still gets distracted. Homework that should take 30 minutes usually takes him an hour and a half or more. At times, he has extra homework as a result of unfinished classwork. He frequently loses things and is very forgetful. And finally, quote, unquote, his grades have been deeply impacted by these issues. Under this court's prior rulings, under the clear law, Cobb County had to evaluate this child at that time. It was raised in the hearing request that he had to be evaluated under both 504 and IDA because both those laws require evaluation. He had a 504, right? He received a 504 second semester, ninth grade. And what the facts show is even after he received that 504 plan, which only said that they were going to try to put him in smaller classes, try to give him math in the morning, and give him some extended time. And one of the arguments we raised is it was ineffective. We proved it was ineffective. School district witnesses testified that it did not teach him the skills that he needed and he was not successful with it. Their own special ed supervisor testified to that at the hearing. Although, I guess, I mean, in fairness, his objective record manifested in grades and scores on AP tests and the like is not terrible. His final product at the end of each semester, he had a D first year, which shouldn't have happened, but he did. Is that pre-504 or post-504? That was post-504. He had a D, but he also had A's and B's. He did. But the testimony is that 75% of his grades he was spelling each semester for four years. That's eight semesters this brilliant child was spelling and they all knew why. How did he end up with A's and B's if he was like failing in the math? The testimony is that the school district would tell the parents to back off, don't help him, don't support him, don't do his work for him, make him learn to be organized. So they'd back off. That would go way south. So then what they would do is hire tutors and get in and basically serve as his front of love for his executive function skills and find out what was missing. Get it done. Also what happened, it's very important to realize, just for example, in that first ninth grade year, he had 141 missing assignments. This is a brilliant kid in a STEM class with a program with 141 missing assignments. If that's not a red flag, there are no red flags. Besides, they knew he had ADHD and it negatively impacted his grades. They forgave 41 of those grades. That's what happened. I'm not putting down the educators. What I'm saying is the system as a whole should have evaluated him, said, look, we've got to teach this child how to be organized. We've got to help him and support him in getting his homework, knowing what materials to have, coming to class with his notebook, staying on task, giving him accommodations. If he was doing work in another class that he was hyper-focusing on, we needed a behavior plan to get him off that work and onto the work he needed to be. The special ed educator, Ms. Davies, testified that we teach this in special ed. This is nothing new. This is what we teach. We can teach these skills. Dr. Nagourney, the school psychologist who evaluated him, said he's a hard worker. He doesn't want to fail. He just hasn't been taught the skills that he needs to be taught. It's not really an issue, is he eligible? They found him eligible. The question is, when did it trigger the requirement to evaluate him? Let me ask a question this way, slightly different. How do we review the district court's finding that the DuBrow's did not request an IDEA evaluation before Connor's senior year? Are we not obliged to review that finding for clear error? Your Honor, you may... Or do we review it de novo? How do you think we review this? Well, I believe the ALJ is not entitled to any deference whatsoever because the ALJ ignored large bodies of... You notice how I asked the question. I asked the question, how do we review the district court's finding that the DuBrow's did not request an IDEA evaluation before the student's senior year? Do we review that for clear error or do we give no weight to that at all? Well, Your Honor... Are we reviewing that de novo? I believe that you are because it's a finding from the lower court, but it is clear error and I can explain why because... No, no, no. I don't want you to just lightly slide over the question because how we review that may be a very important question on the resolution of the underlying question. Do we give... Are we obliged to give some deference to the trial court's determination that the DuBrow's did not request an evaluation before the boy's senior year in high school? I believe you are not, Your Honor. I believe that it is de novo because an appeal pursuant to the IDEA under the statute itself, USC section 1415 is de novo. But isn't the question Judge Marcus is asking, but it's a pure question of fact. Did you or didn't you request the hearing at a certain time? That either did or didn't happen. Isn't that... That is a pure question of fact. Yes, sir. How do I review that de novo? As an appellate court, am I supposed to pick and choose between the evidence and decide for myself? You may choose... Let me finish my question, please. Am I supposed to perform that fact-finding mission as an appellate judge? You may review that for clear error, Your Honor. Okay. So I'm just trying to find out how do I review it. It may be that it's clearly erroneous, but is that the standard of review by which I'm obliged to examine the question of when they asked for evaluation? I believe so, Your Honor. Okay. So it is clear error? I believe. Tell me where the clear error is. That's a tall order. I can do so. Yes, sir. I was there, and I'll tell you what happened. The only evidence in this record at all is that this family asked for in elementary school and middle school that this child get IEP evaluations, and he have a 504, some kind of help. I do want to say that the law is very clear in this country that they did not have to refer him, but I will go forward. And it's in your filing decision as well that the parents didn't have to request. But in any event, both father and mother testified at the hearing that they absolutely requested that he get IEP evaluation. They asked for it. What happened at the July 19th hearing was that we did not have his educational records. The defendant asked, who did you ask this for? Well, this was five to nine years prior. Mother took a few minutes and couldn't remember names. And then she came up with a couple that she directly asked us for. And the judge said, well, she couldn't remember at first. We said if we had those educational records, they would have been in there. But we didn't have his middle school records where they had had the meetings, and she couldn't recall their names. So it ruled that it wasn't credible that she did not believe that they asked for them. We had another eight days of hearing. They never called the names of the people that they said that they asked them for and said, no, she never asked for that. I don't think it's relevant. Wouldn't it be enough for a fact finder to say, I heard A and B, I just didn't believe them? Well, they didn't say that. You assert that the school district admitted in a motion for partial summary judgment that the appellants previously requested relief from the IDEA. There was nothing in this record provided to this court that supports that. What evidence of this admission exists? Yes, sir. It is in their motion for partial summary determination filed. I thought I cited to that, and it should be in the record that the district court sent up. It's in the administrative record. They filed a motion for partial summary determination. And the record that we reviewed, I don't see anything in the record other than what is admitted, what you say is admitted in the motion for partial summary judgment that this admission exists. It was not sent up? The administrative record was not sent up? I want to go back to my question because I'm not satisfied with the answer that I heard from you, is that's not what happened here. I looked at the ALJ's opinion, and the ALJ says, and I quote at page 24, the only evidence the Dubrows presented to establish that there was a requirement for CCSD to provide prior written notice and procedural safeguards was their own testimony. They did not provide the names of a teacher or a counselor from whom they allegedly made a request. Furthermore, the testimony seems to have equivocated on whether they previously requested an IDEA evaluation or testing for a 504 plan. But in light of clarity, specificity, and some inconsistency, the ALJ obviously didn't accept the Dubrows' assertion on that point. If I review it for clear error, I'm still not clear why this determination was off the charts beyond the goalpost that I would step in and find it was clearly erroneous. You're not saying it was an error, a legal error, that infected the determination. It was fact-finding in the purest form. So I'm just not clear if you can tell me just in bullet form why that determination, which you concede must be reviewed for clear error, amounted to clear error. Because the parents both testified under oath that they did, in fact, ask. I think the transcript is why I would suggest that there's clear error when you look at it. And then I thought the administrative law judge did concede that she finally did recall a couple of names in that same order there, and she did. But she did so without the benefit of having the child's records from many, many years prior in a different school. I don't think that's an equivocation. I think that she said she couldn't remember their names, but she asked, and then she sat there and thought, and she did on the transcript. Okay. Thanks very much. And you have reserved your full rebuttal time. You were answering our questions. Thank you. Good morning, Your Honors. Good morning. My name is Michael D'Arceau, and I represent the Cobb County School District. Let me ask you a question at the outset, the same question I asked your colleague. How do we review that fact finding by the ALJ? I apologize. The Eleventh Circuit has found that there is a clear error review. In Draper v. Atlanta Independent School Systems, there's an Eleventh Circuit case from 2008, and I believe that has been cited in the briefings. Specific findings of fact are reviewed for clear error. Okay. Now whose finding of fact are we reviewing for clear error? Are we reviewing the ALJ's finding for clear error, or are we reviewing the district court's review of the ALJ's finding for clear error, or are we reviewing both? That's the universe of possibility. I assume it's the ALJ, but I wanted to be clear that I understood your view on that. I am pretty sure that it is the ALJ. I believe that case law does say not to step into, sorry, you do step into the shoes, but it's a cold record. You review for clear error because the ALJ had the benefit of live testimony, credibility determinations. So the district court is in no better position than we are to review the record and the findings of the ALJ. So that's why we're not giving any deference to the district court's determination on that fact finding. Is that right? I don't think there's clear error to that. I would have to refer to that case right now. You follow the thrust of my question. I'm just trying to get at what do we give clear error deferential review to, to the ALJ's determination of fact or to the district court's determination of fact based upon her review of the ALJ's record? I believe that it makes sense that it is the ALJ who had the live testimony. I apologize, I'm not completely clear. I understand. All right. Thank you. To meet one question that Justice Moore had regarding the assertion in the reply brief of the appellants that there was an omission in a motion for summary determination. That was actually, if you are to look at, I apologize, this was not actually true. In that motion, it was a motion for partial summary determination by the Copp County School District. Looking at that motion, and it should be in the administrative law judge administrative record, it's clear that the district was actually citing an allegation from the appellant's complaint. In there, there is a section that was written by the school district. The following allegations from plaintiff's complaint reveal that any claims arising outside of the two-year statute of limitations should be dismissed, colon. After that, there are multiple paragraphs showing that these particular paragraphs from the plaintiff's complaint, the petitioner at that point, should be dismissed. So there was no admission by the district that there was a request for an IEP meeting or anything like that. That was actually quoting in that brief, quoting the plaintiff's complaint, saying that that should be dismissed. So any argument that there was an admission by the district itself in a legal briefing is not true. And regarding the administrative law judge's determinations here, there is no clear error in this case. Sure, this student had, at points during a semester, would have failing grades. The 504 granted extended time to turn in homework and items like that. Once the student did turn in these assignments, then that failing grade would disappear. And that's how you ended up with a student who actually ended up excelling in a very stressful and demanding school program. The student was in the Wheeler High School magnet program. It is a school of choice option. You have to apply to get into this program, which he did. He ended up with very good grades. He was involved in a lot of extracurricular activities. The judge and the district court itself also neither relied strictly just on looking at grades, looking at aptitude tests, looking at things such as the SAT or the ACT, all of which he did actually score very well in. This was a student who more than had access to the general curriculum. Did he have accommodations on the standardized test, the SAT and the ACT? Do you know? I am not clear on that right now. That's fine. Okay. The IDEA is, you know, its focus is to grant access to students to the general curriculum. This is someone who more than accessed the general curriculum. He was taking beyond general curriculum classes. Teachers testified that they did not believe he had any problem focusing on assignments. When he was in class, he didn't have a problem completing the assignments. His quality of work was very good. He would come back and complete assignments. There was, you know, one of the experts testified that this executive functioning disorder is an invisible disorder. One of the things that would show up is someone who can't follow through on suggestions. That is not true for this student. He clearly would follow through. He would come back. He would complete assignments. That's how he ended up with great grades. There is a lot of testimony in the record showing, you know, all the positives of this student. You know, he helped students with electronics projects. He was a class manager in his electronics classes. He didn't have problems starting assignments in class. He did a very good job and with good results in those. One of his teachers, who was with him for three years and wrote his recommendation letter to MIT, believed that he would be a good independent student at MIT. He would make a great student at MIT. One of the best colleges in the world. Did he ever end up, by the way, getting sort of, I don't mean to cast dispersions, but kind of getting his act together and going to college? He is in college right now, yes. Is that a matter of record in this case? It's not a matter of record. I'm sorry. It's not a matter of record. I do not. I'm not sure. I don't think it's a matter of record. It may not be because I was just curious. I don't remember reading it in the record. I was curious as to what happened to him. Okay. There's also testimony that some of the actions of turning in homework late was not worrisome to teachers because it was not uncommon in this magnet program. Having multiple hours of homework a night is not uncommon in this magnet program. It's a very strenuous program that is much more difficult than what your average high school kid is going through. And Mr. George, who taught him for three years and saw no problems, who spent over 1,000 hours with this student, hired him to work with pedals by George. I thought that was a very showing example. Mr. George testified how dangerous or that soldering guitar pedals can be very dangerous and requires a lot of focus. You're dealing with intricate wiring that you are essentially melting metal together. This could be dangerous. You could easily burn yourself or something else. And this was a student who was able to focus, did not have a problem doing that. I believe that it's important to note that the IDEA has a focus on the need for special education. Having an adverse effect, just the fact that he had ADHD, he had a diagnosis of ADHD, does not mean that he needed special education. The diagnosis itself and adverse effect is only the first prong of whether someone qualifies for special education. You must also exhibit a need for special education. And that need, the focus within the IDEA is where does that need come from? Well, do you need specialized instruction, other specialized items to let you access the general education? Do you need, for example, maybe someone with a listening disability? Do you need something that can help you actually hear the instruction? Are you having a problem hearing the instruction so therefore you're not able to access the curriculum? Someone with ADHD, do they need to have a test chunked down into smaller segments because they can't focus on taking a test? And that would be specialized instruction, specialized assessment. An example of specialized education there, making a test in smaller segments. This was the testimony. This student didn't require that. When he did take a test, he was able to focus. He did a great job. He, none of his tests were chunked or anything to a smaller amount, and he was excelling. He was in a 90-something percentile on some of these standardized tests. End-of-course tests, he would end up making A's on end-of-course tests. That's graded on the general curriculum level. So even if there was a class that he was taking at honors or AP level, I believe for one example, he had one class where it was the worst grade he had in that semester. He had a 70-something in an AP class. AP is the hardest level class that you have in high school. This student took the end-of-course test, which is graded on the general curriculum level, and made a 90-something on that. I think the evidence is overwhelming that there was no reason to believe that this student needed special education, and he didn't need special education. Along with other accomplishments, he had leadership in the robotics club. During one of his projects, he developed a specialized battery pack for small, unmanned flight. He volunteered at summer science camps. He was in the philosophy club. He participated in Ultimate Frisbee League. He worked after school. This was a very busy kid. And who knows what effect that had on his ability to complete homework assignments. And as other teachers said, it is not uncommon at all for students to have hours of homework in that particular program. Additionally, the IDEA itself states that even if there was a procedural violation, a petitioner or a plaintiff has to prove that a denial of a FAPE based on a procedural violation. The petitioner must show that the procedural inadequacies impeded the child's right to a FAPE, significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE, or caused a deprivation of educational benefit. The appellants in this matter, who were the petitioners below, had the burden of proof in this case. They didn't prove that there was a need for special education or that there was any procedural violation that violated his rights. And that is, under clear error review, the numerous factual findings that the administrative law judge made. The administrative law judge made an exhaustive review of this case. As the appellant just stated, I believe it's 100 pages maybe, or at least 100 paragraphs of factual findings. And unlike what has been asserted in some of the briefs, the administrative law judge did not ignore that the student would have failing grades at certain points, did not ignore what the petitioner's experts said during the trial. These excerpts were placed in there. The administrative law judge did make findings on that. As well, the administrative law judge found that the mother wasn't credible when talking about requesting an IEP. You can look in the record. The judge stated that they relied solely on their own testimony. There was no documentary evidence that they had ever requested an IEP or meeting to obtain an IEP. And the only evidence showed that they requested a 504, which they got. The 504, looking through, was the accommodations in that were great. Also, I think it's important to note that freshman year, one of the items that the appellants have claimed that they want is training on organizational issues, was offered by Ms. Suttles, who was in that 504 meeting. She offered to do 30 minutes once or I think maybe once a week, just kind of teach some organizational skills, since that was a worry of the parents. But the parents said no, that this might embarrass the student. They didn't want him to go and meet with someone to teach him how to organize himself. This was something that they claimed that the district failed on, but it was offered to him in the freshman year of school at that 504 meeting. Also, I believe it's good guidance to show it's a Sixth Circuit case, but it's based off of a Middle District of Georgia case that shows that appellants must show that school officials overlooked clear signs of disability and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate. I believe that was cited in the briefs, but it was Board of Education of Fayette County, Kentucky v. L.M., and it quotes Clay T. v. Walton County School District, which is from the Middle District of Georgia. I believe that the evidence I've just talked about, all the positives, the judge looked at the overall scheme of everything that was going on, did not focus just solely on grades, and everything showed that this was a student who was excelling and was more than accessing the general curriculum. I believe my time is out, so if you don't have any questions. Thank you very much. Thank you, Your Honors. Very briefly. Can I just make a suggestion before you start? You flagged at the outset that you wanted to talk about exhaustion and the IDEA issues. We ended up talking all about IDEA and never about exhaustion, so you might want to get that out. Thank you. I have that on my agenda. Okay, perfect. Very quickly, I want to say that Mr. DeRozo, it's unfair to come into a case late. He is the third attorney on this case, and so I understand that he could have the facts incorrect. So I just want to state that Mrs. Settle's training wasn't real training on executive function. What the testimony showed in the record, and it's in our findings, the facts, and conclusions of the law, that he would meet once a week with a student, some student who would help him, but he didn't have any issues with cognition. He had issues where he needed training in executive function, and that's what I want to talk about. The judge ruled that he received FAPE. FAPE is defined by statute as special education provided through an IEP designed to meet the individual child's disability. So say, for example, I'm blind, and I am gifted, and I can make A's and B's, but I can't get down the hallway of the school building because I'm blind and I need mobility training, and it's impacting my grades because I'm coming to school late. Well, then I would get an IEP, and I would get mobility training, and I would have goals and objectives, and you would decide if I received FAPE as to what those goals and objectives were. What this child needed was executive function skills. He was gifted. There are 12, 13, arguably, categories under the IDA of eligibility. Only two would involve someone not being able to really learn. That would be mental impairment or specific learning disability. Being blind doesn't mean I can't learn. So the standard that they're trying to apply is incorrect. I do also want to say that the statutory law is very clear. The ALJ is not ruled for clear error. The ALJ is ruled for de novo. That's in 20 U.S.C. Section 1415. So I think that that was a misunderstanding of the IDA in that situation. And then you then, when you reviewed de novo of the ALJ, you decide if deference is due. So I just wanted to clear that up. Well, let me stop you at that point because I'm confused now. Earlier, I heard you to say that it is an irreducible question of fact whether the due brows did or did not do X, Y, and Z. There's a finding by the ALJ on that. The district court accepts it and says, I agree with that. What do we review for clear error? Well, you asked me how you review the district court. Well, I believe in the district court. What is it that we review for clear error? Do we review the ALJ's determination or the district court's determination, which is based on its review of the ALJ? It would be the district court's unless you review the ALJ's de novo, which is arguably the right approach to take in this case. Okay. So then the clear error applies to our review of the district court's determination on that issue. Is that how it breaks out? I mean, either we defer or we don't. If we review for clear error, we either review for clear error what the district court found or we review for clear error what the ALJ found. I just want to know what your position is on that. I honestly believe that under the law that you review a ALJ's, you, this court, this court reviews the ALJ's decision de novo because that's what's in the statute. So we give no, so you've changed your view. Nothing gets clear error review? Well, if you're going to review the district court, you asked me, that's something different. I think the district court is clear error. Let me, let's start from the beginning. There are only two things we can be reviewing here. The first is the ALJ. The second is the district court. Do we give clear error review to the determination of one or the other or both on this question about whether the Dubrow is, in fact, asked with specificity and clarity? This court has ruled when it's reviewing the district court, it's clear error. I believe the ALJ requires this court to review the ALJ, I mean, the IDA requires this court to review the ALJ's order de novo. That's my understanding of the IDA's 20 U.S.C. section 1415. If I may proceed, I just want to talk about this admission because it became up. I will give you all the time you need, but I just, I'm still unclear. It's probably me, and I just want you to help me with it. The ALJ concluded in the light of the lack of clarity, specificity, and some inconsistency in the plaintiff's testimony, as well as Connor's mother's admitted lack of memory regarding the teacher's names with whom she spoke, and the lack of evidence corroborating their testimony, the undersigned does not find the plaintiff's recollection to be credible. That's what the ALJ said. The district judge said, I agree with that determination. The district judge says the ALJ balanced the testimony of the district's witnesses who testified that the parents had not made the request under the IDEA against the parents who testified that they had made the request. Such a balance involves a credibility determination based on live witness testimony. Having not had the benefit of witnesses before it, the court will not second-guess the ALJ's findings. Instead, the court will defer to the ALJ's credibility findings. Moreover, the district court says, despite the fact that this court did not have live witness testimony before it, the court agrees with the ALJ's conclusion that testimony presented by the plaintiffs lacked clarity and specificity, was somewhat inconsistent, and was not bolstered by any corroborating evidence. After a review of the opinion, the court finds, that's the district court now, that it is correct, and therefore the ALJ was right to limit the plaintiff's claims to the two years preceding the filing of the due process hearing. So the ALJ makes a finding. The district court says, amen, I agree. Do we review that finding by the district court for clear error? My belief is that you review what the administrative rule was. No, no, that's not my question. I'm asking a very precise and specific question. I've laid out in chapter and verse what the ALJ said. I've laid out specifically what the district court said. Do we review the district court's finding on this point for clear error, or do we review what the district court found here de novo? De novo. Because the question that you're asking me is very difficult. I know it's difficult. That's why I'm asking. It's because the ALJ's order is reviewed de novo by statutory requirement. I understand that. I'm asking about the district court. Right. And so the district court, I believe that you're – okay. I believe the proper procedure is to use this court itself to review that order de novo, the administrative ruling de novo. I do believe that's the proper administrative approach. All righty. Thank you. I'm sorry. So to that motion for summary determination, I just want to clarify what Mr. DeRoso said. He said that that was quoted from our complaint. It was. But what a motion for summary determination is in the administrative arena is a motion for summary judgment before the district courts and the state courts. And so you have to state the undisputed facts. And so they took our assertion that there had been requests for evaluations and made that an undisputed fact and numbered it, as he said. And it was a numbered undisputed fact. So I figured that was an admission that they agreed to that. So I just wanted to clear that up. So talk about exhaustion of 504 and the ADA. Yes. Okay. Okay. So thank you for raising that issue. Exhaustion is a very important issue, and I think the Supreme Court in Frye added some more to it. Basically, what Section 1415L says is that if you're going to seek relief under, say, Section 504, as in this case, and that relief can also be available under IDA, you've got to seek that relief under IDA. A very good court case, and it's from this court, and it's not cited in the brief, is Ortego v. Bibb County School District. This court set forth in Ortego what relief is available. The relief that is available is compensatory education, reimbursement to parents for payments, and then sometimes equitable relief, joining the school district from due acting or forcing them to give documents or et cetera. Frye said the only relief you can get under IDA other than procedural relief is for FAPE. The relief that we sought in a nine-day hearing where all the 504 issues were not only raised in the complaint, but were also tried, that 504 was not appropriate. That's one thing I wanted to argue about that we put into the evidence. He said the 504 had a great accommodations, extra times on assignments. It did not until after he had failed in 12th grade. It did not. But was the 504 really presented? I mean, to the ALJ, because didn't you object to the consolidation of the claims? And then the ALJ says at the end of his opinion, just to be clear, we're only talking about IDA here, right? Footnote two on page two, the ALJ said I'm going to consider it, but I'm not going to make any findings on it. But no, absolutely, we introduced the 504 educational plans. And you look at our findings, in fact, and conclusions of law, we argued they were totally ineffective. So why the objection to the consolidation, just so I'm clear? Because, see, they're not paid. Georgia Department of Education used to pay them to hear 504 complaints. They don't pay them by contract anymore. They won't hear a 504 hearing. And what the district court said is we had to have a non-IDA hearing separate from an IDA. You can't get IDA relief in a 504 hearing. We raised, we introduced the 504 plans. We had introduced testimony from the school district that they were ineffective. Ms. Davies, their special ed supervisor, testified they were not effective. He was not successful with them. They did not teach him skills that he needed to be taught. We have so many admissions in the findings of fact. What you're looking at is you're looking at the ALJ's final decision. That is almost carbon copy of the school district's. Compare it to our final decision, and you will see the abundance of evidence in the record that was omitted. And these are actual admissions by the school district. We go back. He said that he cited the case where, you know, what triggers their requirement to evaluate, suspecting a disability. They admitted he had a disability that was severe and lifelong in their own 504 plans when the child was in ninth grade. I'd like to come back to something you just said in response to Judge Newsom. After contesting the impartiality of the 504 hearing, did you withdraw your request for a 504 hearing? We did withdraw, not in the IDA proceeding because this judge ruled she would not hear the IDA matter. So what we did is then the school district went forward to provide a 504 separate hearing, non-IDA hearing, separate. They first selected someone who was a former special ed director, and we said we can't have him. We asked for rights, procedures so we could get subpoenas. They wouldn't give us any rights. We couldn't get procedures. We didn't know who. We asked what is the relationship of this new hearing officer under 504 to the school district and to its attorneys. They wouldn't answer the questions. So we said we don't want a 504 hearing. We want an IDA hearing, and we will raise all the 504 issues in that hearing, and we did. And it's in the record that we did. You've answered my question. I thank you for your time and efforts. Thank you. I thank you both. It's an interesting case. We will take it under advisement. This court will be in recess until 9 a.m. tomorrow morning.